UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>MICHAEL WAYNE BLANCHE,<br><br>       Defendant. | No. 2:05-cr-243 WBS<br><br><br><br>ORDER |
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>MICHAEL WAYNE BLANCHE,<br><br>       Defendant. | No. 2:06-cr-451 WBS |

1

----oo0oo----

Defendant Michael Wayne Blanche has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Docket No. 272 in Case No. 2:05-cr-243 WBS; Docket No. 299 in Case No. 2:06-cr-451 WBS.)[1]

Defendant was sentenced to an aggregate term of 20 years in his two federal cases in 2007 and 2008.[2] After his federal sentencing, in 2010 he pled guilty and was sentenced in Contra Costa County to a 3-year term of imprisonment for first degree robbery to run concurrent to his federal sentence.[3] However, because defendant was first arrested and charged by state authorities and remained in the Sacramento and Contra Costa County jails until he was released to permanent federal custody after his state sentencing, the Bureau of Prisons deemed the State of California to have primary custody and his federal sentence to have started after he was released from his state sentence in 2010.

This calculation by the Bureau of Prisons had the

---

[1] Defendant filed what appear to be identical motions in both cases. The court refers to Case No. 2:05-cr-243 WBS as "the 2005 case" and Case No. 2:06-cr-451 WBS as "the 2006 case".

[2] The undersigned sentenced the defendant to 192 months after a jury trial in the 2005 case. Defendant then pled guilty pursuant to a plea agreement in the 2006 case, and Judge Edward J. Garcia sentenced him to 240 months, running concurrently to the sentence in the 2005 case. Defendant has now been in custody for more than 15 years as a result of the federal and state cases.

[3] This state crime, which involved a "home invasion" robbery, was unrelated to the two bank robberies at issue in the 2005 and 2006 federal cases.

2

effect of running the federal and state sentences consecutively, rather than concurrently.  In defendant's view, this failure to run his sentences concurrently is unjust and constitutes extraordinary and compelling reasons supporting compassionate release.[4]  Defendant also contends that his medical condition and the COVID-19 pandemic warrant his compassionate release.

In order to be eligible for compassionate release, the defendant must demonstrate: (1) the existence of "extraordinary and compelling" reasons, (2) that he is not a danger to the safety of any other person or the community to the community, (3) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)A)(i)-(ii).  The First Step Act amended § 3582(c)(1)(A) to permit a defendant to seek compassionate release after fully exhausting administrative remedies for the failure of the Bureau of Prisons to bring a motion on behalf of the defendant, or 30 days after requesting the warden of the facility to bring such a motion.[5]  See First Step Act of 2018, § 603(b).  Importantly,

---

[4] Defendant filed two petitions under 28 U.S.C. § 2241 challenging the Bureau of Prison's failure to give him custody credits for the five years he was in the Sacramento and Contra Costa County jails.  The district judge in the Central District of California granted the first petition in part by determining that the BOP incorrectly failed to account for his entire five-plus years in state custody, though it denied his request to retroactively designate the state facility where he was in custody as the place he began serving his federal sentence so that his state and federal sentences would run concurrently. Blanche v. McGrew, No. CV 12-5663-JSL (JPR), 2013 WL 3923419, at *4-8 (C.D. Cal. July 29, 2013).  Defendant's second petition was dismissed because it raised the same ground as the first petition.  (Order, Blanche v. Shinn, No. 2:17-CV-1632-JAK-JPR (C.D. Cal. Apr. 21, 2017) (Docket No. 7).)

other than authorizing a defendant to file a motion for relief, § 3582(c)(1)(A) remains unchanged after the First Step Act.  See United States v. Nasirun, No. 8:99-CR-367, 2020 WL 686030, at * 2 (M.D. Fla. Feb. 11, 2020.)

        The Application Notes of Section 1B1.13 of the Sentencing Guidelines define the "extraordinary and compelling reasons" that make a defendant eligible for compassionate release.  See U.S.S.G. §1B1.13.  The examples of extraordinary and compelling reasons for compassionate release as relevant here are: (1) "a terminal illness", see id. at n.1(A)(i); (2) a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover", see id. at n.1(A)(ii); (3) the defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less", id. at n.(1)(B); or (4) "[a]s determined by the Director of the Bureau of Prisons ("BOP"), there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)".  Id. at n.(1)(D).

        Some courts have found that the First Step gives courts discretion to consider virtually any reason as a basis for

---

[5] The government concedes that defendant exhausted his administrative remedies.

1  compassionate release.  See, e.g., United States v. Brooker, 976
2  F.3d 228, 230 (2nd Cir. 2020).  However, given the language of 18
3  U.S.C. § 3582(c)(1)(A), which requires that a defendant
4  demonstrate, among other things, that a reduction in sentence is
5  consistent with applicable policy statements issued by the
6  Sentencing Commission, and the lack of any Ninth Circuit
7  authority to the contrary, this court will continue to assess
8  whether a sentence reduction is consistent with the applicable
9  policy statements issued by the Sentencing Commission.  See 18
10 U.S.C. § 3582(c)(1)(A); accord United States v. Dvorak, 830 F.
11 App'x 846, 847 (9th Cir. 2020) (citing U.S.S.G. § 1B1.13(1)(A)
12 and affirming district court's denial of motion for compassionate
13 release based on determination that the defendant had not
14 demonstrated extraordinary and compelling reasons).

15          As an initial matter, the court notes that defendant's
16 argument here, that the running of his federal sentence was
17 calculated incorrectly because he did not receive credit for his
18 state sentence, was already rejected when his first § 2241
19 petition was denied in part.  There, the judge in the Central
20 District noted that the BOP may decline a request to
21 retroactively designate a state prison as the facility to serve
22 one's federal sentence, notwithstanding a state court's order for
23 the state sentence to run concurrent with the federal sentence.
24 McGrew, 2013 WL 3923419, at *6-7 (citing, inter alia, Reynolds v.
25 Thomas, 603 F.3d 1144, 1148-50 (9th Cir. 2010), overruled on
26 other grounds by Setser v. United States, 566 U.S. 231 (2012));
27 see also 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment
28 imposed at different times run consecutively unless the court

orders that the terms are to run concurrently.").

Further, while defendant's possible state sentence was not discussed at sentencing for the 2005 case (see Docket No. 124 in Case No. 2:05-cr-243), the BOP contacted the undersigned in connection with defendant's first § 2241 petition. (BOP Letter, Mar. 9, 2012, Case 2:12-cv-5663 JSL JPR (Docket No. 8-3 Ex. H).) The undersigned responded to the BOP's letter explaining that the court "was aware of the 2005 pending charge (state conviction) and could have taken judicial notice and ordered the custody term to run concurrently to any other custody term imposed but it did not." (Letter to BOP, Apr. 5, 2012, Case 2:12-cv-5663 JSL JPR (Docket No. 8-3 Ex. I).)

In that letter, the undersigned noted 18 U.S.C. § 3584(a)'s instruction that "[m]ultiple terms of imprisonment imposed at different times run concurrently unless the Court orders they run concurrently," stated that this court "elected not to order the federal sentence to run concurrently with the state sentence at that time," and recommended against the retroactive state designation requested by defendant, after considering the facts and circumstances of the cases and defendant's history and characteristics. (Id.) In sum, the undersigned explained that retroactive designation would not be consistent with the court's intentions at the time of sentencing. (Id.)

Defendant also acknowledged in his memorandum in support of his first § 2241 petition that Judge Garcia stated at sentencing in the 2006 case that he was not inclined to run the sentence concurrent to defendant's yet to be imposed state

1  sentence.  (Pet. Mem. June 29, 2012, Case 2:12-cv-5663 JSL JPR
2  (Docket No. 2 at 11).)  There is nothing unjust about the
3  defendant's state sentence running consecutively to the federal
4  sentences where both judges involved in the federal sentencings
5  indicated that the federal and state sentences should run
6  consecutively, even if the judgments did not expressly state that
7  intent.  Thus, this court rejects defendant's argument that the
8  BOP's calculation of his sentence and credits for state custody
9  warrants compassionate release.

10         Moreover, regardless of the understanding of the
11 parties and courts as to whether the federal and state sentences
12 would run consecutively or concurrently, the court would deny
13 compassionate relief.  A defendant's failure to receive an
14 expected sentence from a state court, or the failure of the
15 Bureau of Prisons to calculate the defendant's sentence as
16 intended by the state court, are not one of the bases for
17 compassionate release listed by the Sentencing Commission or by
18 the Bureau of Prisons.  Nor are they even remotely similar to any
19 of the bases listed.  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §
20 1B1.13(1)(A).

21         The court further finds that defendant's health
22 condition in combination with the continued pandemic does not
23 warrant compassionate release.  The court recognizes that
24 defendant is suffers from obesity and hypertension and is housed
25 at FCI Mendota, which has had numerous inmates test positive for
26 the coronavirus.  Nevertheless, defendant is only 37 years old,
27 and it appears that the Bureau of Prisons has been able to
28 sufficiently treat his medical conditions.  Moreover, the

7

defendant has made no showing that he would receive any better care outside of the Bureau of Prisons or that he would be better able to get a COVID-19 vaccination outside of federal custody than he would be in custody.  The court notes that COVID-19 vaccines are becoming increasingly available, with the President recently announcing that "[b]y the end of July, we'll have over 600 million doses, enough to vaccinate every single American." Maureen Chowdhury, <u>Biden: Covid-19 Vaccines Will be Widely Available by the End of July</u>, CNN.com, Feb. 16, 2021, https://www.cnn.com/politics/live-news/joe-biden-town-hall-02-16-21/h_dcc5457025a71bf4fbdd1d92d42bab35.

   The court will not speculate as to when a vaccine will be offered to defendant, but there is no reason to believe that the general prison population will be vaccinated any later than the majority of the public, and by all reports, the vaccines available in the United States are extremely effective in preventing moderate or severe COVID-19 infections.  Thus, in effect, defendant asks to be permanently released from physical custody based on a risk that will have been largely mitigated before the end of the year, if not much earlier.  Under the circumstances here, court is unwilling to grant such a request.

   Overall, defendant has not shown that his medical conditions along with the COVID-19 pandemic, even in combination with the sentencing issue discussed above, qualify as extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

   Finally, the court finds that compassionate release is inappropriate based on defendant's failure to show that he is not

a danger to the community.  To be eligible for compassionate release, defendant must demonstrate that he is "not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); United States v. Richardson, No. 2:16-cr-69 TLN, 2020 WL 5203430, at *2 (E.D. Cal. Sept. 1, 2020).  Here, given the gravity and severity of defendant's criminal history, including armed bank robberies where victims were threatened and had guns pointed at them, which the undersigned described at sentencing as terrorism, and other serious state crimes including home invasion, defendant has not met this burden.

IT IS THEREFORE ORDERED that defendant Michael Wayne Blanche's motions for compassionate release (Docket No. 272 in Case No. 2:05-cr-243 WBS; Docket No. 299 in Case No. 2:06-cr-451), be, and the same hereby are, DENIED.

Dated:  March 2, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE